R. L. DABNEY *v.* J. W. HUDSON.

1. DE FACTO OFFICER. *Official acts. Recognition by public.*
    The rule which imputes validity to the acts of those who are officers *de facto* rests upon the principle that it is essential to protect those who, finding an office filled by one performing its duties and recognized by the public as the true officer, deal with him on the faith that he is such.

2. SAME. *Acts without color of right. No official functions.*
    Where there is neither colorable right to the office, nor performance of official functions, nor recognition of official character by the public, one who, without right, assumes to perform an official act cannot be regarded an officer *de facto*.

3. SAME. *Unauthorized act. Case in judgment.*
    Where one, who was in November elected justice of the peace for the term beginning January 6th, and who qualified and received from his predecessor the docket January 1st (both believing the term to begin that day), issued a writ of replevin January 4th, the writ is void. Having assumed to perform no other official acts, and not being regarded by the public as the officer, the issuance of the writ was not the act of a *de facto* officer.

FROM the circuit court of De Soto county.

HON. JAMES T. FANT, Judge.

The opinion states the facts.

Section 415, code 1880, which is invoked by appellee, is as fol-

lows : " The official acts of any person in possession of any public office, and exercising the functions thereof, shall be valid and binding as official acts, in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold such office or not, and whether such person shall be lawfully qualified or not ; but such person shall be liable to all the penalties imposed by law for usurping or unlawfully holding such office or exercising the functions thereof, without lawful right or without being qualified according to law."

*Perkins & Percy,* for appellant.

Section 415, code 1880, has not so altered the common law that the validity of official acts cannot be inquired into in this proceeding. To constitute an officer *de facto,* there must be color of right by election, or appointment, or acquiescence by the public for a length of time that would afford strong presumption of a colorable right. *Kimball* v. *Alcorn,* 45 Miss. 158 ; *Brady* v. *Howe,* 50 Ib. 623.

Mere delivery of the docket to Hughey could not make him a *de facto* justice of the peace. There had been no acquiescence by any one in his unwarranted assumption of official authority.

*McKenzie & Wall,* for appellee.

Hughey was certainly a *de facto* officer in possession of, and exercising the functions of the office of justice of the peace, and his official acts as such are valid and binding as to all persons affected thereby. Code 1880, § 415.

There was no other person in the district in discharge of the duties of said office. Hughey, believing he had authority to act, filed his bond, took possession of the docket, and discharged the duties of the office.

In *Cohn* v. *Beal,* 61 Miss. 398, there was no *de jure* officer in actual possession of the office, and that case is not in point.

COOPER, J., delivered the opinion of the court.

At the November election in the year 1889 one Hughey was elected a justice of the peace for the 3d district in De Soto county for the

term of two years, to begin on the first Monday of January thereafter. One Stewart was the predecessor of Hughey and he continued to reside in the district until after the beginning of the term for which Hughey had been elected, January 6, 1890. Both Stewart and Hughey seem to have rested under the belief that the term of Stewart ended, and that of Hughey began, on the first *day* instead of the first *Monday* of January, for on that day Stewart delivered and Hughey received the docket belonging to the justice of that district and thereafter Stewart performed no official act. On the 2d day of January, 1890, an affidavit was made before Hughey for the writ of replevin in this cause, which writ was issued by him on the 4th day of January. At these dates Hughey had filed his bond as a justice of the peace for the term for which he had been elected, but had not taken the oath of office.

The administration of the oath to the plaintiff in replevin for the writ, and the issuance of the writ were the first and only official acts done by him, and, so far as the record shows, no part of the public except Stewart had recognized his claim to be then an officer. The writ was returnable on January 11th, on which day a judgment by default was rendered by Hughey in favor of the plaintiff, from which judgment the defendant appealed to the circuit court, and there moved to quash the writ of replevin on the ground that Hughey was neither a *de jure* nor *de facto* officer at the time of its issuance. This motion was submitted on an agreed state of facts, the substance of which we have stated, and the court overruled the motion. This action raises the first and principal error assigned.

We have examined many decisions upon the question involved, and find in the general discussion of the subject no little confusion, or, to be more accurate, an absence of clear and definite statement of what is or is not sufficient to clothe one professing to act officially with the character of a *de facto* officer. Expressions are found in several cases to the effect that there must be a colorable appointment or election to the office to constitute the person acting a *de facto* officer. In *State* v. *Carroll,* 38 Conn. 449, Butler, Chief Justice, in an elaborate and careful opinion, examined the cases so

intimating or deciding, and demonstrates the error in principle of their decisions, and also shows them to be opposed to the decided preponderance in number of English and American cases.

It has also been sometimes suggested, even by the most distinguished judges, that the validity of the act of one claiming to be an officer cannot be inquired into in a collateral controversy between third persons, because, the officer not being a party to the proceeding, it would be unjust to him to permit his title to be put in issue and decided. Pearson, C. J., in *Fowler* v. *Bebee*, 9 Mass. 271; Ruffin, C. J., in *Burke* v. *Elliott*, 4 Iredell, Law, 355. But it is clear that the rule rests upon no such foundation, for, if it did, the title of a mere usurper could not be controverted, for he would not be a party to the suit, and his right differs in degree and not in kind from that of one having no right but a mere color of right to an office. The true and only foundation of the rule is that it is essential for the protection of those who must have official business transacted, and who have neither the time nor the opportunity to investigate the title of the incumbent. Finding the office filled by one performing its duties and recognized by the public as the true officer, those having occasion for his services may trust to the facts being as the appearances indicate them to be, and in so doing will be protected. But the law affords this protection, because to refuse it would be to mislead to their injury persons who in good faith and upon reasonable grounds believe the person professing to be an officer to be such in fact. If he is a mere intruder, acting without color of right and without recognition by the public, no one should believe him to be an officer and deal with him as such, for no one can reasonably believe a fact to exist for which he has no reasonable grounds.

On the facts disclosed by this record, there was neither a colorable right in Hughey to the office of justice of the peace, nor previous or other performance of official functions, nor recognition of his official character by the public or any part thereof. He was a mere usurper and it was the fault and folly of the plaintiff to resort to him for the issuance of the writ of replevin, and on motion the same should have been quashed.

*Reversed, writ of replevin quashed and suit dismissed.*