## Commonwealth v. Flatt.

(Decided March 25, 1927.)

### Appeal from Hickman Circuit Court.

1.   Clerks of Courts.—Office of county court clerk cannot be declared vacant for failure to give bond within time stipulated in Ky. Stats., section 3755, where judge told clerk when she took oath of office

that he would approve bond on subsequent day, since clerk must work under direction of judge, and judge waived tender of bond made within time stipulated.

2. Clerks of Courts.—County court, in taking bond of county court clerk, has same power as in other cases to postpone hearing of matter, notwithstanding Ky. Stats., section 3755, requiring bond to be given on or before day on which term of office begins.

3. States.—Commonwealth is not affected by laches of its officers.

4. Clerks of Courts.—Intention to mislead another to his prejudice will not be imputed to county judge in telling one elected county court clerk that he would approve bond on day subsequent to time fixed in Ky. Stats., section 3755.

FRANK E. DAUGHERTY, Attorney General, and F. B. MARTIN for appellant.

J. E. ROBBINS, J. E. WARREN, JOE W. BENNETT, JOHN R. EVANS, J. N. BRUMMELL and M. C. ANDERSON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Mrs. R. B. Flatt was duly elected county court clerk of Hickman county at the November election 1921. She duly qualified and held the office for that term. She was a candidate for re-election in 1925, and was elected by a majority of over 1,000. She received her certificate of election. On the first Monday in January she and the county judge each took the oath of office. Her bond for the preceding term was given on January 7th, 1922. The agent of the surety company suggested to her that her bond need not be renewed until four years thereafter which was January 7th, 1926. When she took the oath of office she told the county judge what the agent had said about the bond; the county judge said to her that it would be all right, to have the bond prepared and to enter the order approving it on January 7th. She had the bond prepared and entered the order on the order book approving the bond, but on January 7, the county judge refused to sign the order approving her bond and took the minute book out of the clerk's office to his office. He there entered an order on the minute book removing Mrs. Flatt as county court clerk and appointed James A. Porter to the office. Porter thereupon executed bond, which was approved by the county judge by an entry on the minute book in his office. Mrs. Flatt refused to enter these orders on the order book. Thus things stood until September 22, 1926, when the commonwealth attorney brought this suit in the name of the commonwealth, praying the judg-

ment of the court that Mrs. Flatt be required to vacate the office of county court clerk and to deliver all records in the office to James A. Porter. The defendant filed answer, stating the facts above set out. The plaintiff demurred to the answer. The demurrer was overruled. The plaintiff stood upon the demurrer. The court dismissed the action. The plaintiff appeals.

It appears from the answer that both the county court and the fiscal court were in session on January 4 and 5; the clerk was very busy in writing the minutes of the two courts and in drawing the orders, which she wrote up as soon as possible. Among them she wrote up the order showing her qualification and the execution of her bond and had the same ready for the county judge to accept the bond and sign the order book on the forenoon of January 7, and although on January 4 he had told her to have the bond executed and he would accept it on January 7, he arbitrarily refused to accept her bond on January 7, or to sign the order which he had himself directed to be entered on the order book.

Section 3755, Kentucky Statutes, is as follows:

"If the official bond is not given, and the oath of office taken on or before the day on which the term of office to which a person has been elected begins, or in cases of persons appointed to office within thirty days after such person has received notice of his appointment, the office shall be considered vacant, and he shall not be re-eligible thereto for two years. (Term of office begins first Monday in January after election. Con., sec. 99.)"

In Barnett v. Hart, 112 Ky. 728, it was held that where a justice of the peace failed to qualify and give bond on the first Monday in January, the office was vacant, concluding its opinion the court said:

"We have nothing to do with the harshness of the law, if, indeed it was harsh, which can not be fairly said, as we think, for the appellant had from the time he received his commission until and during the first Monday in January to comply with the statute, and there being no provision authorizing the county judge to take the bond at a later date, it seems to us that the judge could not lawfully or properly accept or approve the bond after the first Monday in January."

In the subsequent case of Dorian v. Paducah, 136 Ky. 373, where the officer tendered his bond and it was arbitrarily refused, the court said:

"It is manifest that the general council, in refusing to approve the bond, did so for the purpose of recognizing Dorian as the city treasurer, and not because there was any valid objection to the bond. Its action, then, was arbitrary and without legal excuse. As Walters was eligible to the office and was duly elected, and as he took the oath of office and tendered a good and sufficient bond, and thereafter attempted to perform the duties of the office, and did in fact perform certain duties, we conclude that he did all that the law required him to do in order to entitle him to the office; and, having done all that he was required to do in the premises, he can not be deprived of his compensation by the arbitrary action of the general council in refusing to approve a bond which, by its subsequent approval thereof, it admits to be in all respect legal and sufficient."

This case falls within the principle thus announced. When appellee told the judge that her old bond was regarded by the bonding company as good until January 7, and would be renewed on that day, and he told her to get up the bond and make the order on that day and he would sign it, the clerk had the right to go by his direction. The clerk of a court must work under the direction of the judge of the court. The orders must be entered as he directs and when he directs. It would be idle for the clerk to write orders which the judge had directed not to be entered. If the judge had told her she must give her bond on January 4, she would have done so. It was all the same to her whether it was given then or on January 7. The arrangement with the bonding company had been made and all that had to be done was to draw and sign the bond. This was not done at the direction of the judge, the fiscal court being in session and the presence of the judge and clerk being required in that court. The county court in taking a bond has the same power as in other cases to postpone a hearing of the matter. If an order had been entered on January 4, giving until January 7, for the execution of the bond, this controversy would, perhaps, never have arisen. The failure to enter such an order was a mere irregularity. The clerk is not

chargeable with this; she could not enter such an order unless directed by the judge, and he, in substance, told her what to enter and she did as he directed. For him on the 7th to refuse to sign the order he had directed to be entered was to mislead her, and if so intended on the 4th was a fraud on her. However, we may assume that both of them acted innocently on the 4th, and that the conduct of the judge on the 7th was due to a changed conception of the law, made in the meantime, to the effect that he had lost jurisdiction over the giving of the bond. We do not so construe the statute. This is not a case where the county judge, or officer authorized to take the bond, did nothing to mislead the officer offering to qualify, or one where the latter's predicament was the sole result of his own neglect. We construe the facts disclosed by the record to be tantamount to an offer on the part of Mrs. Flatt to execute her bond on the day she qualified if the county judge so required. Certainly, if she had actually tendered to him a properly executed bond at that time and he had declined to approve or accept it and thereby permitted the time to pass without such acceptance or approval, she would not be deprived of her office solely upon the ground that her bond had not been accepted or approved at the proper time. The facts are analogous to the principles relating to the doctrine of "tender" in the law, and when the presence of the thing tendered is waived by the one to whom the tender is made, it will be given the same legal effect. Here, the county judge waived the tender of appellee's bond on January 4, and continued her offer to do so until the 7th. After the county judge said what he did it would have been idle for appellee to tender her bond to him and for her to do this might well have been regarded by him as a disrespect. The clerk did all she could reasonably do, and it would be to extend the statute beyond its fair meaning to apply it in such a case.

It is earnestly insisted that the commonwealth is not affected by the laches of its officers. But while this is true the commonwealth does not impute laches to its officers and is not interested in converting innocent acts done by them into frauds on equally innocent third parties. The commonwealth is but the personification of all the people of the state, and certainly these people are interested in honest and fair dealing. The county judge is in charge of the county court, and an intention to mislead another to his prejudice will no more be imputed here

than in other cases. In all other cases no one loses a right in obeying the direction of the court or is in a worse position than he was before.

> "*An act of the court shall prejudice no man.*"
> "The above maxim 'is founded upon justice and good sense, and affords a safe and certain guide for the administration of the law.' " Broom's Legal Maxims, 121.

This is peculiarly applicable to the clerk of the court who, from the very nature of his position, takes his orders from the court. The county judge should sign the order on the order book. No other question is considered.

Judgment affirmed. Whole court sitting. Chief Justice Clay and Judges Dietzman and McCandless dissenting.

### DISSENTING OPINION OF JUDGE DIETZMAN.

Believing that the majority opinion is supported neither by the law, nor by a fair interpretation to be put on the facts alleged in the answer, on a demurrer to which this case went off, I am impelled to dissent.

First, with regard to the law. Section 103 of the Constitution provides:

> "The judges of county courts, clerks, sheriffs, surveyors, coroners, jailers, constables, and such other officers as the general assembly may from time to time require, shall, before they enter upon the duties of their respective offices, and as often thereafter as may be deemed proper, give such bond and security as may be prescribed by law."

Sections 3753 and 3755 of the statutes read:

> Section 3753: "No officer from whom a covenant is required shall enter upon the duties of his office until the same is given. A breach of this provision, or a failure to take the oath of office prescribed by law, shall be a misdemeanor, punishable by a fine of not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00), and, on conviction thereof, such officer shall be removed from office by the judgment of the court where such conviction is had."

Section 3755: "If the official bond is not given, and the oath of office taken on or before the day on which the term of office to which a person has been elected begins, or in cases of persons appointed to office within thirty days after such person has received notice of his appointment, the office shall be considered vacant and he shall not be re-eligible thereto for two years."

These constitutional and statutory provisions, which have been a part of our law for many years prior to the adoption of our present Constitution, seem to me to be perfectly clear and to mean exactly what they say. The Constitution provides that clerks *shall* before they enter upon the duties of their respective offices give the bond prescribed by law. Section 3753 of the statutes provides that no officer from whom a bond is required (and a clerk is such an officer) shall enter upon the duties of his office until the same is given. These constitutional and statutory provisions were enacted for a very wise purpose. Officers who are required to give bond are in the main those who handle the moneys of the commonwealth. The Constitution and the statutes very prudently provide that no one shall undertake to handle the money of the commonwealth until he shall have given bond to faithfully account for them. The framers of our Constitution and our Legislature never intended that an officer should handle any moneys of the state until the commonwealth was safely secured, and that if he did attempt to do so his office might by the proper authorities be declared vacant. The Constitution and statutes work no hardship because they allow ample time between the election or appointment of an officer and the date of his qualification within which he may execute the bond mentioned. The language of the Constitution and statutes is not complicated, but remarkably clear. There is no excuse in the world for an officer qualified to perform the duties of his office not understanding and appreciating the clear language of the statutes. The authorities construing this statute are in accord with my view of it. Lowe v. Phelps, 14 Bush 642; Barnett v. Hart, County Judge, 112 Ky. 728, 66 S. W. 726, 23 Ky. L. R. 2116. I am of opinion, then, that the requirements of the statutes and Constitution above cited are mandatory. This being true, it follows that no officer has any authority to waive them. This proposition ought hardly to call for a discussion; but,

since the majority opinion seems to me to rest in part on a sort of waiver, it may not perhaps be amiss to call attention to the many opinions of this court adhering to the sound rule that no public officer has power to waive the mandatory provisions of our Constitution or of any statute. Some of these authorities are City of Winchester v. Board of Education of the City of Winchester, 182 Ky. 313, 206 S. W. 492; Gay v. Jackson County Board of Education, 205 Ky. 277, 265 S. W. 772; Robinson v. Town of Paintsville, 199 Ky. 247, 250 S. W. 972; Bates v. City of Monticello, 173 Ky. 244, 190 S. W. 1074, and Burnside Land Co. v. Connelly & Lee, 218 Ky. 346, 291 S. W. 409. This last case is particularly instructive on this point and very *apropos* to the instant case. Analogous to this principle is that of those cases under which the state or municipality is not precluded from recovering on official bonds because of some neglect of its officers in taking the bond or in complying with its provisions governing a recovery on a default. Bankers' Surety Co. v. City of Newport, 162 Ky. 473, 172 S. W. 940; Fidelity & Deposit Co. of Md. v. Commonwealth, 104 Ky. 579, 47 S. W. 579, 49 S. W. 467; Wade v. City of Mt. Sterling, 33 S. W. 1113, 18 Ky. L. R. 377. (In this case, the city was allowed to recover against the surety even though those taking the bond were guilty of fraud in failing to disclose to the surety at the time he signed the bond the fact that his principal had not made his settlement nor been given a quietus for previous collections made by him.) See, also, 10 R. C. L. 705.

I concede that, under the case of Dorian v. City of Paducah, 136 Ky. 373, 124 S. W. 369, if the officer who is required to give bond tenders a good and sufficient one, and the officer or body which is required to take and approve it for no good reason fails or refuses to do so, then the officer who has tendered the good and sufficient bond is entitled to his office, since he has done all that he could or is required to do. As I understand it, the majority opinion is also rested in part on this proposition which I concede. But it is certainly true in my judgment that no tender can be worked out of the facts pleaded in appellee's answer, and this brings us to the facts in this case. So far as pertinent, the answer with regard to the execution of the bond in question says:

, "She (the appellee) says that several days before January 4, 1926, she had arranged with E. B.

Samuels, the acting agent for the United States Fidelity & Guaranty Company in Hickman county, Ky., for said company to make her official bond and that the said Samuels agreed to make said bond and advised her that inasmuch as her first bond was made on January 7, 1922, that said bond would run for 4 years, and it was not necessary to make her bond until the 7th day of January, 1926, and he agreed to and did afterwards prepare said bond and have it ready in due form of law for it to be filed and accepted by the county court of Hickman county on the forenoon of the 7th day of January, 1926.

"She says that under the direction of the said W. H. Van Hook, county court judge, on the 4th day of January, 1926, she was duly qualified by his administering the oath of office to her; that at said time she advised the said Van Hook, county judge, that she had been informed by the said Samuels, whom, as agent, had agreed to make her bond on the 7th day of January, 1926, and that he, Van Hook, after administering the oath of office to her on the 4th day of January, 1926, directed the defendant to make a minute on the minute book of his administering the oath of office to her, and he also advised her that the bond was satisfactory and that he would accept it, and for her to have the bond executed and presented as soon as she could conveniently enter the order on the order book. . . . She says that although on the 4th day of January he told her to have the bond executed and that he would accept it on the 7th day of January, but notwithstanding his direction and agreement made on the 4th day of January, he arbitrarily, corruptly and illegally refused to accept her bond or to sign the order which he himself had directed to be entered on the order book. . . .

"She further says that she could and would have executed the bond on the 4th day of January, 1926, but for the directions of the county court judge to have the order entered and the bond executed by the 7th day of January, 1926, and his agreement to sign the order and accept the bond on said date, and that she relied upon his agreement to do so."

It seems to me to be impossible to put any interpretation on these facts other than that the appellee, instead of seeking legal advice, took that of an insurance agent

who told her that it was not necessary for her to execute the bond on the day that the law requires. She made no effort to present or tender any bond on that day, but simply told the county judge what the insurance agent had advised her, and the county judge told her that this was all right. The appellee's answer expressly says she made no tender and presents an excuse why she failed to do so. The excuse is unavailing. The county judge had no authority to waive the statute or Constitution as we have seen. If he could waive their requirements for three days, he could waive them for any length of time and thus defeat the constitutional and statutory provisions entirely. The state is even not precluded if the county judge acted fraudulently in his statement. See the Wade case *supra*. The truth about the whole matter is that appellee, with the Constitution and statute plainly before her, utterly failed to comply with their mandatory requirements, and now seeks to excuse that failure, not because of any refusal of the county judge to accept the tender of a good and sufficient bond offered by her within the time provided by law, but because, forsooth, she says she was misled by his conduct, and so failed to tender the bond. Not only have I failed to find any authority sustaining her position in this regard, but I have found abundant authority, part of which I have cited, to utterly refute the soundness of her contention. I admit the appellee's case is a hard one, but, despite the adage, we ought not to permit hard cases to make bad law. Appellee was an experienced county clerk. She had qualified once before as such. She presumably knew the law. At least she is charged with such knowledge. Her failure to qualify properly on this occasion is her own fault, and though a hardship, she ought to abide the consequence. Therefore I am of the opinion that the judgment of the lower court should be reversed, with instructions to sustain the demurrer to the appellee's answer.

I am authorized to say that Chief Justice Clay and Judge McCandless concur in this dissent and these views.